Carl R. Scacchetti, Jr., J.
The matter now before the court is for an order to show cause why a subpoena duces tecum, served upon the Gannett Press for appearance of employees and for photographs taken on May 11, 1972, should not be quashed.
Gentlemen, the court has wrestled with the statements contained in section 79-h (subd. [a], pars. [6], [8]; subd. [b]) of the Civil Rights Law of New York State; and now, as far as the first argument posed by counsel for the defendant,- Wayne Bonnakemper, regarding that the motion is premature, it is the court’s ruling that of course it is not premature. Further, the court states that the only effective means available to the subpoenaed one, Gannett Press in this instance, would be by way of an order to show cause and to bring it on before trial, so that the matter can be fully and fairly determined by the court. As to that argument, the court makes the ruling as stated, at this time.
Now, many arguments have been posed by counsel for the Gannett Press and for the defendant, Wayne Bonnakemper. As far as this court is concerned, let me state this regarding section 79-h of the Civil Rights Law: there has been argument pertinent to the fact that it deals with and applies to individuals and not corporations. In this instant case, we have what is commonly termed a question unanswered, because of a question not in fact asked in the first instance. That question never asked is whether or not corporations should be afforded rights prescribed under section 79-h of the Civil Rights Law, whether corporations should have been protected, and, as to that, the court will not legislate.
The court cannot avoid, however, the message proposed by Governor Rockefeller in the over-all intent of the legislation in the first instance, and that is to protect, and I use this in a generic sense, the news media in their ability to accumulate, to dissect, to edit those specific items of news which either come into its possession by involuntary or voluntary means either by people who are employed by them or people who are not employed by them. To think otherwise, that the section in and of itself has no application to, as Mr. McCrory puts it, in this case, the cor *698 poration, the Gannett Press, would be to obviate the necessity of additional legislation, which does not seem to be the case as fas as I see in the message of Governor Rockefeller.
To think otherwise, as I have stated, would encourage an allegedly aggrieved individual to use the back door technique for what he could not secure through the front door, that is, if I cannot get it from the individual, let me get it from the corporation.
This court does not know nor does it propose to have knowledge of what the corporate policies are of the Gannett Press as to what becomes their property and what does not become their property as far as the news gathering items are concerned, and in that relation, I am not only talking about written notes, but also photos: — I do not know what the Gannett Company policy is regarding these items, whether after publication of a news story these items are destroyed or what. But to say that we are giving the right to individuals to be protected from the production of their products or, I should say, exempting them from contempt for refusal to comply with judicial subpoena to produce those items, and then say that that right is not afforded the corporation, that in effect is saying, if I cannot get it from the individual, I will get it from the corporation; no matter what, one way or the other, I am going to get the items I seek.. So, really, as this court has stated before, the whole sectiop. of the Civil Rights Law (79-h) would become ludicrous in that regard.
Now, we have one area regarding section 79-h of the Civil Rights Law that the court would like to mention and that is the possible waiver of immunities affordable under the law. That matter has been touched on in these proceedings; but the court states that, in effect, if a person does publish photos in a newspaper journal, the question has been posed, does he, in effect, waive any immunity which may be afforded him under section 79-h and various subdivisions therein. This court makes a negative ruling, in that, even though voluntarily published in a newspaper, the photos are still the property of and the work product of an individual photographer employed by the corporate newspaper. In the present case, the corporate newspaper is the Gannett Press and that right afforded the individual photographer under section 79-h, as well as the Gannett Press, stays and remains with both, even though they do not, in effect, voluntarily publish one of those particular items (i.e., photos). It would seem to this court as stated before, that the rights afforded the individual under section 79-h contemplate not only the pro *699 teetion of the individual, but of necessity, that right must elongate itself into a protection of the employer.
To do otherwise, and to think otherwise, would make the whole statute unnecessary and so watered down that it would have no meaning whatsoever and there would have been no reason for Governor Rockefeller to have expounded on the belief that “ a free press is a press that can best serve the community ”.
In substance, gentlemen, what this court is saying is that the subpoena duces tecum served upon the Gannett Press and/or its employees and the request to produce those items, work items, work products, photos in this instance, into court, cannot and will not by this court be punishable by contempt for failure to comply, and the court, in effect, is stating that the judicial subpoena in this instance may not and does not have to be complied with. That is the ruling of this court, gentlemen.
Motion to quash is granted.